IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| ELIEZER SANTANA, #255667, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 1:10-CV-493-TMH |
| | ) | [WO] |
| | ) | |
| JOHN CUMMINS, *et al.*, | ) | |
| | ) | |
| Respondents. | ) | |

# RECOMMENDATION OF THE MAGISTRATE JUDGE

## I.  INTRODUCTION

Eliezer Santana ["Santana"], a state inmate represented by counsel, filed this 28 U.S.C. § 2254 petition for habeas corpus relief on June 8, 2010.  In this petition, Santana challenges a conviction for first degree sexual abuse imposed upon him by the Circuit Court of Coffee County, Alabama.[1]  On September 18, 2007, the trial court conducted a sentencing hearing.  At the conclusion of this hearing, the court adjudicated Santana guilty of first degree sexual abuse and sentenced him to 102 months imprisonment.

## II.  PROCEDURAL HISTORY

On February 9, 2007, a grand jury for Coffee County, Alabama issued a four-count indictment against Santana charging him with first degree rape, first degree sodomy, first

---

[1]The petitioner entered his guilty plea on August 6, 2007.

degree sexual abuse and incest.[2] The portion of the indictment relevant to the instant petition charged that Santana "did subject to sexual contact another person ... who was less than 12 years of age, in violation of Section 13A-6-66 of the Code of Alabama...." *Respondents' Exhibit 8 - Doc. No. 13-2* at 1.[3] The trial court arraigned Santana on these charges and he entered a plea of not guilty at that time.

The court convened for trial on the charges contained in the indictment in August of 2008. The parties qualified and struck a jury. At some point during these proceedings, the State moved to amend the third count of the indictment to reflect that the actions of Santana in subjecting his stepdaughter to sexual contact constituted a violation of Ala. Code § 13A-6-69.1. Counsel for Santana objected to amendment of the indictment and argued that the original indictment under the provisions of Ala. Code § 13A-6-66 should remain in effect. *Respondents' Exhibit 6 - Doc. No. 10-6* at 137. Counsel appropriately sought to bar amendment of the indictment because the State's proposed amendment would have increased the sexual abuse offense–an offense which Santana had admitted

---

[2]The victim of these offenses was Santana's stepdaughter who was five years of age at the time of the offenses.

[3]The indictment charged the offense of first degree sexual abuse as defined in Ala. Code § 13A-6-66(a)(3) which made it unlawful for someone "16 years of age or older [to] subject another person to sexual contact who is less than 12 years old." Sexual abuse in the first degree is a Class C felony. Ala. Code § 13A-6-66(b). Effective July 1, 2006, the Alabama Legislature amended Ala. Code § 13A-6-66. This amendment removed subsection (a)(3) from Ala. Code § 13A-6-66 and placed the provisions of that subsection addressing sexual contact with a child under 12 years of age into § 13A-6-69.1 so as to separately define the crime of "sexual abuse of a child less than 12 years old." The amendment also increased the degree of this offense from a Class C felony to a Class B felony. Ala. Code § 13A-6-69.1(b).

committing to counsel–from a Class C felony to a Class B felony, thereby subjecting Santana to a much higher range of punishment if convicted of the offense.[4]  The trial court denied the State's request to amend the indictment.  *Id*. at 150.

Prior to beginning the jury trial, the State offered to dismiss the rape, sodomy and incest charges in exchange for Santana's entry of a guilty plea to first degree sexual abuse. After weighing his options, Santana chose to enter a guilty plea to this charge.  Santana executed an explanation of rights and plea of guilty form, commonly identified as an *Ireland* form.  *Respondents' Exhibit 7 - Doc. No. 13-1*.  In so doing, Santana certified to the court that his "attorney has read and explained the matters set forth above [regarding entry of guilty plea to first degree sexual abuse]; that my rights have been discussed with me in detail and fully explained; that I understand the charge or charges against me; that I understand my rights, the punishment or punishments provided by law as may apply to my case, and I understand the consequences of pleading guilty; that I am not under the influence of any drugs, medicines, or alcoholic beverages; and I have not been threatened or abused or offered any inducement, reward, or hope of reward to plead guilty other than the terms of the plea agreement which will be stated on the record."  *Id*.  Santana further admitted his guilt to first degree sexual abuse and acknowledged that he "made up [his]

---

[4]The range of punishment "[f]or a Class B felony [is] not more than 20 years or less than 2 years[,]" whereas the range of punishment "[f]or a Class C felony [is] not more than 10 years or less than 1 year and 1 day."  Ala. Code § 13A-5-6(a)(2) and (a)(3).

own mind to plead guilty, and that [he] knowingly, intelligently, and voluntarily waive[d] [his] right to a trial in this case." *Id*.

Upon receiving notice of Santana's intention to enter a guilty plea, the trial court conducted a plea colloquy with Santana.  The relevant portion of this colloquy reads as follows:

> THE COURT:  ...  We have qualified and struck a jury [on the charges contained in the indictment], and the Court has been informed ... that maybe an agreement has been worked out where the Defendant would enter a plea.  Is that correct?
>
> MR. SAWYER [Counsel for Santana]:  That is correct, Your Honor.
>
> THE COURT:  All right.  Is there an agreement to which the Defendant will enter a plea?
>
> MS. HARRISON [The Prosecutor]:  Yes, sir.  ***The State is moving to nol-pros the charges of rape first, sodomy first, and incest.  And I believe he is going to plea to sexual abuse in the first degree***.
>
> * * *
>
> THE COURT:  ... Okay.  Are you Eliezer Santana?
>
> THE DEFENDANT:  Yes, sir, I am.
>
> * * *
>
> THE COURT:  All right.  You understand that you've been charged in all of these four cases; one of sodomy first, one of rape first, one of incest, which two of those, the rape and sodomy, ... are Class A felonies, and the incest is a Class C felony. And you've also been charged with sexual abuse first degree in this matter as a Class C felony.  Do you understand that?
>
> THE DEFENDANT:  Yes, sir.

THE COURT:  ... [H]ave you got an Ireland form?

MR. SAWYER:  Yes, sir.

THE COURT:  All right.  Let me see that.  You understand that on the two Class A felonies that there's -- the agreement is that they would be nol-prossed on the condition that you enter a plea to the sexual abuse first degree?  Do you understand that?

THE DEFENDANT:  Yes, sir.

THE COURT:  Do you understand that on these Class A felonies that may be nol-prossed that if you were convicted on them, you could be sentenced to no less than ten years and not more than ninety-nine years or life in the state penitentiary?  You understand that?

THE DEFENDANT:  Yes, sir.

THE COURT:  *Now, also with regard to the incest and the sexual abuse first degree that are Class C felonies, you understand that upon a conviction of either one of those, you could be sentenced to no less than one year and one day and not more than ten years in the state penitentiary*, and you could be fined an amount not to exceed $15,000.

THE DEFENDANT:  *Yes, sir*.

THE COURT:  Okay.  You understand any sentence imposed upon a conviction of these [offenses] could run consecutive or concurrent if you were convicted on more than one of these offenses?  Do you understand that?

THE DEFENDANT:  Yes, sir.

THE COURT:  Now, let me talk to you specifically about this sexual abuse first degree, which I have an explanation of rights and plea of guilty form that you have submitted to the Court.  I'm just going to ask you:  This form that I'm holding up, the explanation of rights and plea of guilty form that Mr. Sawyer has brought up here, it appears to have your signature on there [certifying your understanding of the contents of the form].... [D]id you sign that form?

5

THE DEFENDANT:  Yes, sir.

THE COURT:  You're telling me that's your signature on this form...?

THE DEFENDANT:  Yes, sir.

THE COURT:  ***It talks about the punishment range, and it talks about that you've been charged with sexual abuse first degree and that you are going to enter a guilty plea to that***.  ***Do you understand that***?

THE DEFENDANT:  ***Yes, sir***.

THE COURT:  It also talks about that you're waiving certain rights by entering a guilty plea.  And I'm going to talk to you a little bit more about those rights here in a minute.  But one thing [the form] tells this Court is that you desire to enter a guilty plea or you are entering a guilty plea.  I want to make sure you understand that you have the right to enter a plea of not guilty, not guilty by reason of mental disease or defect, or both not guilty and not guilty by reason of mental disease or defect.  Do you understand you could enter those pleas to this charge of sexual abuse first degree instead of saying, Judge, I plead guilty?

THE DEFENDANT:  Yes, sir.

THE COURT:  You understand you have the right to remain silent and may not be compelled to testify or give evidence against yourself, but you have the right to do so if we had a trial?

THE DEFENDANT:  Yes, sir.

THE COURT:  I'm going to talk to you about some of those rights that you are waiving by entering your guilty plea.  Do you understand that by pleading guilty that you waive your right to a trial by a jury; you waive the right to confront witnesses against you; you waive the right to cross-examine witnesses and have them cross-examined in your presence; you waive the right to testify and present evidence and witnesses in your own behalf; and you waive the right to subpoena witnesses to trial?  You understand that?

THE DEFENDANT:  Yes, sir.

THE COURT:  And while I'm on this, I've talked to you about the punishment range.  I want to make sure you understand that with sexual abuse first degree, a conviction of that or if the Court accepts your plea, that you would be required to register as a sex offender and comply with any community notification acts?

THE DEFENDANT:  Yes, sir.

THE COURT:  You also understand that any conviction of a sex offense may have a significant impact on any rights you have with regard to any kind of custody or living arrangements you may have in the future with a minor child?

THE DEFENDANT:  Yes, sir.

THE COURT:  You understand if this Court accepts your guilty plea that there will be no trial on the issue of your guilt?

THE DEFENDANT:  Yes, sir.

THE COURT:  You understand that we're resolving the issue of your guilt with regard to this charge of sexual abuse first degree by you entering your guilty plea today?  Do you understand that?

THE DEFENDANT:  Yes, sir.

THE COURT:  Now, do you understand that there's no right to appeal your guilty plea unless you or your attorney before entering your guilty plea specifically reserves any issues for appeal?  Do you understand?

THE DEFENDANT:  Yes, sir.

THE COURT:  I'm going to ask you this:  Are there any issues being reserved for appeal?

MR. SAWYER:  None.

THE COURT:  I'm just going to ask you: ***With regard to the charge of sexual abuse first degree, how do you plea***?

THE DEFENDANT:  ***Guilty, sir***.

7

THE COURT:  *Has anybody forced you to get you to come in here and plead guilty*?

THE DEFENDANT:  *No*.

THE COURT:  *Has anybody in any way threatened you or coerced you in any way to get you to come in here and plead guilty*?

THE DEFENDANT:  *No, sir*.

THE COURT:  *Has anybody made you any promises to come in here and plead guilty*?

THE DEFENDANT:  *No, sir*.

THE COURT:  *Do you understand that this Court - - that I have the final say so of how you'll be sentenced in this case*?

THE DEFENDANT:  *Yes, sir*.

THE COURT:  *Now, I'm just going to ask you this: Are you pleading guilty to sexual abuse first degree because you are, in fact, guilty of that offense*?

THE DEFENDANT:  *Yes*.

THE COURT:  *Now, for the record, I need you to tell me what you did*.

THE DEFENDANT:  *Sir, I touched my little girl on the outside of her panties*.

MR SAWYER:  *In her vagina area; is that correct*?

THE DEFENDANT:  *Yes*.

THE COURT:  *And what is her age*?

THE DEFENDANT:  *Her age at the time was five, sir*.

THE COURT:  Mr. Sawyer, do you know of any reason the Court should not accept your client's guilty plea?

8

MR. SAWYER:  We've agonized over this, Your Honor, and that's exactly what we've come to the conclusion to do.

THE COURT:   Mr. Santana, are you satisfied with the way Mr. Sawyer has represented you in this case or all of these cases?

THE DEFENDANT:  Yes, sir.

THE COURT:  Do you have any objection in the manner in which he's conducted himself or your defense in these cases?

THE DEFENDANT:  ... I'm happy with Mr. Sawyer.

THE COURT:  Do the parties stipulate and agree that there's a factual basis for the Defendant's plea?

MS. HARRISON:  The State so stipulates.

MR. SAWYER:  Defense stipulates.

THE COURT:  Is there a stipulation with regard to the issue of forcible compulsion with regard to this offense?

MR. SAWYER:  There is a stipulation with regard to that, Your Honor.

THE COURT:  ... Ms. Harrison, has the victim's representative been notified and consulted with regard to this matter?

MS. HARRISON:  Yes, sir.  Mrs. Christina Santana is here, Your Honor, at the prosecutor's table with me, and she has been advised and concurs with this sentence that we have discussed.

THE COURT:  When you say sentence - -

MS. HARRISON:  I mean, the plea.

THE COURT:  The plea.  Okay.  I just wanted to make sure we get the record straight.

MS. HARRISON:  The plea ... with us nol-prossing the other charges and his pleading guilty to the sexual abuse.

* * *

THE COURT:  All right.  Mr. Santana, upon you entering a guilty plea, the Court finds that your plea has been voluntarily and intelligently made and is not the result of any force, threat, coercion, or promise in this matter, and I find you guilty of sexual abuse first degree.

MR. SAWYER:  Your Honor, we would ask the Court to grant us a presentence report and hearing.

THE COURT:  Okay.  And I probably went a little further than I planned on doing in these cases ... I will [therefore] retract the Court finding you guilty.  I will adjudicate at the sentencing hearing.  So I'm going to withdraw that and do the adjudication at the sentencing hearing....

*Respondents' Exhibit 1 - Doc. No. 10-1 at 5-15 (emphasis added).*

The court conducted a sentencing hearing on September 18, 2007,  during which it received testimony on behalf of Santana from five witnesses.[5]  Two of these witnesses testified that Santana admitted to them that he had sexually abused his stepdaughter. *Respondents' Exhibit 1 (Guilty Plea Transcript) - Doc. No. 10-1 at 26-27, 42.*  Upon completion of the testimony submitted by the witnesses for Santana and addressing other relevant matters, the court stated as follows:

...[W]hen Mr. Santana entered his plea, I told him there was a punishment range of one year and one day ... up to a total of ten years, which would be up to a hundred and twenty months.

---

[5]Although additional witnesses willing to testify on Santana's behalf were present at the sentencing hearing, counsel did not call these witnesses to testify as their testimony would have been "redundant." *Respondents' Exhibit 6- Doc. No. 6* at 149.

Mr. Santana, based on your prior plea that's been entered, the Court finds you guilty of sexual abuse first degree. And having listened to everything here at this sentencing hearing today, and, obviously, you had a career in the military -- you know, obviously, that is very commendable.... You've had people come in and talk about you and talk about you being loyal and being a Christian person, and those things are good. Nobody, I don't think, disputes whether or not you've been a good, loyal person and a soldier. Yes, honorable, loyal people do make mistakes. But what we've got here goes a little further than that. You were in a position of trust when you were trusted with the young victim in this case, which was a daughter or a stepdaughter. That is one of the most important roles. And when I say trust -- she's been betrayed now by someone that she was in a position to trust to do what's right. That's what children depend on is that comfort and trust when they're at home. And there's been a big betrayal in this case.

One thing that I do commend you for is by coming in here and admitting your guilt. You have admitted your guilt, which spared this young victim of having to come in here and testify in a public trial. And, in considering that -- you know, all of that is being considered as I come to imposing the sentence in this case. And the only reason I'm considering -- would even consider coming off the maximum sentence in order to protect this child would be your admission to this Court.

You're looking at a maximum sentence of one hundred and twenty months. This Court sentences you to one hundred and two months to the state penitentiary....

*Respondents' Exhibit 1 - Doc. No. 10-1 at 54-56.*

Santana did not file a direct appeal of this conviction. However, on July 9, 2008, Santana, while represented by habeas counsel, filed a state post-conviction petition, pursuant to Rule 32 of the Alabama Rules of Criminal Procedure.[6] In this state post-conviction petition, Santana argued that his guilty plea was not knowingly and voluntarily entered because counsel advised "he could possibly receive probation in this cause but if

---

[6]Counsel represented Santana throughout the state post-conviction proceedings.

he was, in fact, incarcerated that he would receive a sentence [of] about two years and with good time ... the entire incarceration would be less." *Respondents' Exhibit 6 - Doc. No. 10-6* at 4. Santana further alleged that counsel coerced him to enter a guilty plea by advising him "that he had to 'plea now' or WHEN, not if, he was found guilty of all the charges that he would 'get sentenced to life'." *Id*. at 5. Finally, Santana argued that the trial court refused to hear testimony from all of his witnesses during the sentencing hearing. *Id*.

The trial court conducted a hearing on the Rule 32 petition. At this hearing, Santana, his mother and sister all testified, as did trial counsel. Santana and his witnesses presented testimony in support of the claims on which Santana sought relief. As is relevant to the claims before this court, Santana testified that counsel promised him a two-year sentence, counsel did not advise him of the elements of first degree sexual abuse and he therefore had no knowledge of the elements of this offense. On cross-examination, Santana specifically testified "that everything [he] said" during the guilty plea colloquy "was a lie." *Respondents' Exhibit 6 - Doc. No. 10-6* at 61.

In contradiction to the evidence offered by Santana, trial counsel presented testimony that: (1) It is his standard practice to explain the elements of charged offenses to his clients; (2) He explained the elements of sexual abuse to Santana "from time to time" and discussed the entire case with Santana "on several occasions" during preparations for trial; (3) With respect to specific consultations with Santana, he assumed such explanation

was "in depth because of the serious nature of the" charges; (4) It is his normal practice to explain the provisions contained in the *Ireland* form to his clients; (5) He would not have advised Santana that good time applied as good time was not available due to the sexual nature of the charges lodged against Santana; (6) He did not guarantee Santana that the trial court would impose any specific sentence or that Santana would serve only two years in prison; (7) He advised Santana that "the Judge is the ultimate purveyor of" the sentence to be imposed; and (8) Based on his conversations with Santana, watching a DVD of the young victim describing "the terrible things" Santana did to her, Santana's admitting to counsel that "he felt of [his stepdaughter's] private parts after his wife [left the room] ... and [the child] got moist[,]" he stipulated during the plea colloquy that a factual basis existed for Santana's plea. *Respondents' Exhibit 6 - Doc. No. 10-6* at 122-140.

Upon conclusion of the Rule 32 hearing, the trial court issued an order denying Santana's request for relief from his conviction. *Respondents' Exhibit 6 - Doc. No. 10-6* at 12-15. The order, in pertinent part, reads as follows:

> The Petition appears to allege that the Petitioner did not knowingly, voluntarily and intelligently enter a plea of guilty to the offense of Sexual Abuse in the 1st Degree in violation of Section 13A-6-66, Code of Alabama.
> The Petitioner was indicted by a Grand Jury for the offense[s] of Rape in the 1st Degree, Sodomy in the 1st Degree, Incest and Sexual Abuse in the 1st Degree (13A-6-66). The Petitioner entered pleas of not guilty to all offenses.
> On August 6, 2008, the court proceeded with jury qualifications, voirdire and jury striking. A jury was properly qualified and struck.
> The court was later informed that an agreement had been reached wherein the Petitioner would plead guilty to ... Sexual Abuse in the 1st

Degree (13A-6-66) and the State would dismiss the other three (3) charges.

A colloquy was conducted. The Petitioner was presented and represented by [counsel. The Petitioner understood the agreement that the three (3) other charges which were Rape in the 1st Degree, Sodomy in the 1st Degree and Incest would be Nolle Prosequi on the condition that he enter a guilty plea to Sexual Abuse in the 1st Degree in violation of § 13A-6-66, Code of Alabama. The Petitioner stated that he understood that Sexual Abuse in the 1st Degree was a Class C Felony and upon a conviction he could be sentenced for one (1) year and one (1) day up to ten (10) years in the State Penitentiary. The Petitioner acknowledge[d] that he execute[d] the Explanation of Rights and Plea of Guilty Form. The Petitioner was fully informed of the right[s] he was waiving by entering his plea of guilt. The Petitioner acknowledged that we were resolving the issue of his guilty by the entry of the plea of guilty.

The Petitioner understood that the court had the final say of how he would be sentenced. There was no ... recommended sentence.

The Petitioner stated that he was pleading guilty of the offense. He stated: "I touched my little girl on the outside of her panties". When asked by his attorney if the touching was in the vagina area the Petitioner stated "yes". The parties stipulated that there was a factual basis for the guilty plea. The parties stipulated to the issue of forcible compulsion as an element.

During the plea colloquy the Petitioner stated he was satisfied with the representation of counsel and had no objection as to the way Attorney Sawyer had conducted himself or the way he conducted the defense.

The court found the plea of guilty was made voluntarily and intelligently and was not the result of any force, threat, coercion or promises.

A Presentence Report was requested and a Sentencing Hearing was scheduled and held September 18, 2007.

The Petitioner presented testimony [from] several witnesses at the Sentencing Hearing. Witness, Samuel Fellanger testified that the Petitioner told him he did it and he was pleading guilty to doing it. Witness, Victoria Sizemore testified that the Petitioner told her he had performed an act of sexual abuse of a child.

The Defendant was sentenced to serve one hundred two (102) months in the State Penitentiary.

It appears from the pleadings that the Petitioner has raised the following issues or grounds:

**1. Whether the Petitioner's plea of guilty was made voluntarily**.
This court finds that the Petitioner knowingly, voluntarily and

intelligently entered his plea of guilty and the plea was not the result of force, threat, coercion or promises.   The Petitioner was made aware of the Sentencing Range.  The Petitioner admitted to touching his little girl in the vaginal area.   The parties stipulated there was a factual basis for the Petitioner's plea of guilty.   The Petitioner stated he was pleading guilty because he was guilty of the offense of Sexual Abuse in the 1st Degree.  At the Sentencing Hearing at least two (2) witnesses indicated [Santana] had admitted to having sexual conduct with the child.

**2.   The Petitioner appear[s] to allege that the guilty plea was not voluntarily made and claims that his attorney made misrepresentation[s] that the Petitioner would receive a split sentence or a probationary sentence if he plead[ed] guilty**.

During the colloquy the Petitioner stated that he understood the court had the final say as to sentencing.   The State said no promises had been made to get him to plead guilty.   There was not a plea or settlement agreement. The only agreement was that the Rape in the 1st Degree, Sodomy in the 1st Degree and Incest cases would be Nolle Prosequi if [Santana] entered a guilty plea to Sexual Abuse in the 1st Degree, § 13A-6-66, <u>Code of Alabama</u>. Attorney J. E. Sawyer, Jr., testified at the hearing held in this matter, that no promises had been made as to what any sentence would be.

**3.   The Petitioner seems to allege that Judge Jeff W. Kelley did not allow witnesses to testify at the Sentencing Hearing**.

This court did not prevent any witnesses from testifying at the Sentencing Hearing.[7]

* * *

Based upon the finding[s] stated above the relief sought by the Petitioner is **<u>DENIED</u>** as the Petitioner has failed to provide proof by a preponderance of evidence the facts necessary to entitle the Petitioner to relief.

*Respondents' Exhibit 6 - Doc. No. 10-6* a 12-15 (emphasis in original) (footnote added).

Santana filed an appeal of this ruling. In his appeal, Santana argued that the trial court erred in denying the Rule 32 petition because he presented testimony indicating that

---

[7]The court did, however, advise counsel that "he didn't need to put repetitive witnesses on during the hearing...." *Respondent's Exhibit 6 - Doc. No. 10-6* at 47.

"Santana was told [by counsel] he would receive only a two year sentence and further that no post judgment motions were filed" despite requests that counsel do so. *Respondents' Exhibit 2 (Petitioner's Brief on Appeal from Denial of Rule 32 Petition) - Doc. No. 10-2* at 9. Specifically, Santana argued that he "did not receive the sentence represented to him by his counsel. The testimony given by both Mr. Santana and his Mother, demonstrated that he was told that with good time, he would receive a two year sentence.... Furthermore, Mr. Santana did not receive the proper post judgment procedures which [counsel represented Santana] would receive." *Id.* at 20. On August 30, 2009, the Alabama Court of Criminal Appeals issued a memorandum opinion affirming the trial court's decision to deny post-conviction relief. *Respondents' Exhibit 5 - Doc. No. 10-5*. The relevant portion of this opinion states that:

> On July 9, 2008, Santana filed the present Rule 32 petition, challenging the voluntariness of his guilty plea, based on the alleged misrepresentation by his trial counsel as to the sentence that he would receive. Santana alleged that his counsel informed him that by pleading guilty to first-degree sexual abuse, the other charges would be dropped and he could possibly only receive a probationary sentence. He alleged that counsel told him that if he was incarcerated, he would be sentenced to about two years; however, with good time credit, it would be less. Santana alleged that counsel informed him that, if he did not plead guilty, he would be found guilty and sentenced to life imprisonment. Santana also indicated that he had a number of witnesses prepared to testify in his behalf at the sentencing hearing, but the trial court only allowed a few of them to testify. He submitted that, after sentencing, counsel promised to discuss his sentence with him; however, he alleged that counsel never did so.
>
> After conducting an evidentiary hearing, the circuit court denied the petition and issued an order finding that Santana knowingly, voluntarily, and intelligently entered his guilty plea; and was aware of the sentencing range.

The parties stipulated to the factual basis.  Moreover, the circuit court noted that two of the witnesses at the sentencing hearing indicated that Santana admitted having sexual conduct with the child victim.

As to the allegation that his sentence was misrepresented to him, the trial court found that Santana acknowledged at the guilty plea hearing that he understood the trial court had the final word in sentencing him. The only agreement was that the State "nolle prosequi" the other three charges if Santana pleaded guilty [to first degree sexual abuse].  The circuit court lastly stated that trial counsel testified that no promises were ever made concerning what sentence Santana would receive.

In its order denying the petition, the circuit court also confirmed that, although Santana seemed to imply that he was prevented from presenting witness testimony at sentencing, the court stated that it did not do so.

On appeal, Santana alleges that the witnesses that he presented at the Rule 32 hearing proved that his counsel promised that he would receive a two-year sentence, and failed to file certain post-conviction motions although [counsel] promised to do so.

The circuit court did not abuse its discretion by choosing to believe trial counsel's and certain other witnesses' testimony, rather than the testimony of other witnesses presented by Santana.  In Jenkins v. State, So.2d 111 (Ala. Crim. App. 2004), affirmed in part, reversed in part on other grounds, Ex parte Jenkins, 972 So.2d 159 (Ala. 2005), this Court upheld the circuit court's credibility choices as to witnesses at the Rule 32 hearing with which Jenkins had taken issue, stating:

> "'The resolution of ... factual issue[s] required the trial judge to weigh the credibility of the witnesses.  His determination is entitled to great weight on appeal.... "When there is conflicting testimony as to a factual matter ..., the question of the credibility of the witnesses is within the sound discretion of the trier of fact.  His factual determinations are entitled to great weight and will not be disturbed unless clearly contrary to the evidence."'

"Calhoun v. State, 460 So.2d 268, 269-70 (Ala. Crim. App. 1984) (quoting State v. Klar, 400 So.2d 610, 613 (La. 1981))."

972 So.2d at 142.

Here, the circuit court clearly indicated in its order that it believed the testimony of the trial counsel and the two witnesses [at sentencing] cited by the circuit court who testified to Santana's admissions....

This determination by the circuit court that it believed those witnesses

was not an abuse of discretion.  See Hayes v. State, 616 So.2d 367, 368 (Ala. Crim. App. 1993) (where Hayes alleged that his counsel was ineffective for advising him to plead guilty and failing to advise him of his maximum possible sentence, the circuit court properly resolved the conflicting evidence presented at the hearing to determine that the plea was voluntary).

Based on the foregoing, the judgment of the circuit court is affirmed.

*Respondents' Exhibit 5 - Doc. No. 10-5* at 1-4 (citation to record omitted).

Santana filed a petition for writ of certiorari with the Alabama Supreme Court in which he argued that the Alabama Court of Criminal Appeals improperly denied his appeal as he was due relief on his claims regarding trial counsel's alleged misrepresentation of the sentence he would serve and counsel's failure to file post-judgment motions. *Respondents' Exhibit 4 (Petition for Writ of Certiorari) - Doc. No. 10-4*. In support of his petition, Santana argued that the trial court abused its discretion in relying on the testimony of the State's sole witness, trial counsel, as the basis for its denial of relief while disregarding the testimony presented by Santana and his mother. *Id*. at 5-6. The Alabama Supreme Court denied Santana's petition for writ of certiorari and issued the certificate of judgment on February 12, 2010. *Respondents' Exhibit 3 - Doc. No. 10-3* at 2.

Santana filed the instant federal habeas action on June 8, 2010. In this habeas petition, Santana asserts the following claims for relief:

> 1.  The guilty plea was involuntary, unknowing, unintelligent and unlawfully induced because Santana had no knowledge of the essential elements of first degree sexual abuse and did not understand the consequences of the plea as he relied on counsel's misrepresentation that the

18

court would impose a sentence which required that he serve only two years in prison.

2.  Trial counsel provided ineffective assistance when: (1) Counsel advised Santana he would receive a two-year sentence upon entry of the guilty plea; (2) Counsel failed to object to the court's omission of an explanation of the elements of the offense during the guilty plea colloquy; (3) Counsel failed to consult with Santana regarding entry of a stipulation to a factual basis for the elements of the offense; and (4) Counsel did not ensure that Santana understood the material elements of the offense and the consequences of the guilty plea with respect to the sentence which could be imposed.

*Petition for Writ of Habeas Corpus - Court Doc. No. 1.*

In their answer to the petition, the respondents argue that the claims pending before this court entitle Santana to no relief. Specifically, the respondents contend that the majority of Santana's claims of ineffective assistance of counsel and his claim alleging a lack of knowledge of the elements of the offense are procedurally barred from review because Santana failed to present these claims to the state courts as required by the State's procedural rules either at trial, on direct appeal or in his Rule 32 petition. *O'Sullivan v. Boerckel*, 526 U.S. 838, 845, 119 S.Ct. 1728, 1732-1733 (1999) ("[S]tate prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process," including review by the state's court of last resort, even if review in that court is discretionary.); *Pruitt v.*

*Jones*, 348 F.3d 1355, 1359 (11th Cir. 2003) ("Nothing in *Boerckel's* reasoning suggests that a different rule should apply in state post-conviction appeals as opposed to direct appeals."); *Smith v. Jones*, 256 F.3d 1135, 1140 (11th Cir. 2001), *cert. denied*, 534 U.S. 1136, 122 S.Ct. 1081, 151 L.Ed.2d 982 (2002) ("Alabama's discretionary direct review procedures bring Alabama prisoner habeas petitions within the scope of the *Boerckel* rule."); *Brownlee v. Haley*, 306 F.3d 1043, 1065 (11th Cir. 2002); *Holladay v. Haley*, 209 F.3d 1243, 1254 n. 9 (11th Cir.), *cert denied*, 531 U.S. 1017 (2000); *Bailey v. Nagle*, 172 F.3d 1299, 1303 (11th Cir. 1999); *Atkins v. Singletary*, 965 F.2d 952, 955 (11th Cir. 1992); *Collier v. Jones*, 901 F.2d 770, 773 (11th Cir. 1990).  In order to provide the state courts with the requisite full and fair opportunity to address his claims, "the petitioner [must] 'fairly present' his federal claims to the state courts in a manner to alert them that the ruling under review violated a federal constitutional right.  *Duncan v. Henry*, 513 U.S. 364, 365-66, 115 S.Ct. 887, 888, 130 L.Ed.2d 865 (1995) (quoting *Picard v. Connor*, 404 U.S. 270, 275, 92 S.Ct. 509, 512, 30 L.Ed.2d 438 (1971)).  Exhaustion is not satisfied 'merely' if the petitioner presents the state court with 'all the facts necessary to support the claim' or even if a 'somewhat similar state-law claim was made.'  *Kelley v. Sec'y for Dept. of Corr.*, 377 F.3d 1317, 1344 (11th Cir. 2004) (citation omitted)."  *Pearson v. Sec'y for Dept. of Corr.*, 273 Fed.Appx. 847, 849-850 (11th Cir. 2008).

In support for their procedural default argument, the respondents maintain that Santana's claim alleging his guilty plea is unconstitutional because he did not understand

the elements of the offense; and his claims of ineffective assistance of counsel, with the exception of the claim involving counsel's purported promise of a certain sentence; are procedurally barred from review by this court because these claims were not properly exhausted in the state courts during the Rule 32 proceedings.  In particular, the respondents argue and the record establishes that Santana did not present these claims in his initial Rule 32 petition filed with the trial, or to either the Alabama Court of Criminal Appeals or the Alabama Supreme Court on appeal from the trial court's denial of the Rule 32 petition.

With respect to those claims that Santana properly exhausted in the state courts– i.e., the challenge to the constitutionality of his guilty plea based on trial counsel's alleged promise of a two-year sentence and the attendant claim of ineffective assistance of counsel– the respondents argue that Santana is entitled to no relief from this court as the state courts properly adjudicated these claims on the merits.  *Price v. Vincent*, 538 U.S. 634, 638, 123 S.Ct. 1848, 1852 (2003) ("A habeas petitioner whose claim was adjudicated on the merits in state court is not entitled to relief in federal court unless he meets the requirements of 28 U.S.C. § 2254(d)."); *Williams v. Taylor*,529 U.S. 362, 402, 120 S.Ct. 1495, 1518 (2000).

This court provided Santana an opportunity to file responses to the answers of the respondents. In his initial response, Santana argues "that Procedural Default is not applicable as the prevalent issues" were properly exhausted during the Rule 32 proceedings "before the Circuit Court of Coffee County, [the] Alabama Court of Criminal Appeals, and

the Alabama Supreme Court.  The issues differ only in the labeling or name, the substance of the complaint is the unconstitutionality of the Plea and Ineffective Assistance of Counsel, (Joe Sawyer)." *Petitioner's August 17, 2010 Response - Doc. No. 14* at 10. Santana also argues that "procedural default should not apply [because] Counsel failed to properly articulate these claims in presentation to the State Courts in accordance with procedural rules and applicable federal law," *Petitioner's August 17, 2010 Response - Doc. No. 14* at 13, and the "[f]ailure to consider [procedurally defaulted claims] will result in a fundamental miscarriage of justice" because Santana is actually innocent of first degree sexual abuse.  *Petitioner's December 15, 2010 Response - Doc. No. 26* at 3.

Upon review of the § 2254 petition, the answers of the respondents, Santana's responses to the answer, the state court record, opinions issued by the state courts and applicable federal law, this court finds that no evidentiary hearing is required, Rule 8(a), *Rules Governing Section 2254 Cases in United States District Courts*, and concludes that the petition is due to be denied.

### III.  DISCUSSION

### A.  Claims Adjudicated by the State Courts

The instant petition for federal habeas relief is governed by 28 U.S.C. § 2254, as amended by the Anti-Terrorism and Effective Death Penalty Act ["AEDPA"].  *Lindh v. Murphy,* 521 U.S. 320, 326 (1997) (federal habeas petitions filed after the effective date of the AEDPA are subject to the Act's provisions). "A habeas petitioner whose claim was

adjudicated on the merits in state court is not entitled to relief in federal court unless he

meets the requirements of 28 U.S.C. § 2254(d)." *Price*, 538 U.S. 634, 638, 123 S.Ct. 1848,

1852; *Williams*, 529 U.S. 362, 402, 120 S.Ct. 1495, 1518.   Under 28 U.S.C. § 2254(d),

with respect to a claim adjudicated on the merits in state court, federal habeas relief from

a state court judgment may not be granted unless the adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an
> unreasonable application of, clearly established Federal law, as
> determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable
> determination of the facts in light of the evidence presented in
> the State court proceeding.

In *Williams*, the Supreme Court held:

> Under the "contrary to" clause a federal court may grant the
> writ if the state court arrives at a conclusion opposite to that
> reached by this Court on a question of law or if the state court
> decides a case differently than this Court has on a set of
> materially indistinguishable facts.  Under the "unreasonable
> application" clause, a federal habeas court may grant the writ
> if the state court identifies the correct governing legal principle
> from this Court's decisions but unreasonably applies that
> principle to the facts of the prisoner's case.

529 U.S. at 412-413, 120 S.Ct. at 1523.

Habeas relief is appropriate when a petitioner demonstrates "that a decision by a

state court is 'contrary to' ... clearly established [Supreme Court] law if it 'applies a rule

that contradicts the governing law set forth in [the Supreme Court's] cases' or if it

'confronts a set of facts that are materially indistinguishable from a decision of [the

Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent.' *Williams v. Taylor*, 529 U.S. 362, 405-406, 120 S.Ct. 1495, 146 L.Ed. 2d 389 (2000)." *Price*, 538 U.S. at 640, 123 S.Ct. at 1853. Additionally, federal review in a habeas action "is limited to whether the state court's decision was objectively unreasonable in the light of clearly established federal law. *Williams*, [529 U.S. at 409],120 S.Ct. at 1521." *Hawkins v. Alabama*, 318 F.3d 1302, 1310 (11th Cir. 2003); *Parker v. Head*, 244 F.3d 831, 835 (11th Cir. 2001), citing *Williams*, *supra* ("[F]ederal habeas relief [is] available under the 'unreasonable application' standard only if the state court's application of clearly established federal law was 'objectively unreasonable.'"). Thus, a federal court is not to decide "the correctness *per se* ... of the state court decision" but only the "objective reasonableness" of such decision. *Brown v. Head*, 272 F.3d 1308, 1313 (11th Cir. 2001). Moreover, "an **unreasonable** application of federal law is different from an **incorrect** application of federal law." *Williams*, 529 U.S. at 410, 120 S.Ct. at 1522 (emphasis in original). "Clearly established federal law is **not** the law of the lower federal courts, including this court. Instead, in the habeas context, clearly established federal law 'refers to the holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state court decision.' *Williams*, 529 U.S. at 412, 120 S.Ct. at 1523." *Putman v. Head*, 268 F.3d 1223, 1241 (11th Cir. 2001) (emphasis in original).

It is clear that "§ 2254(d)(1)'s 'contrary to' and 'unreasonable application' clauses have independent meaning. 529 U.S., at 404–405, 120 S.Ct. 1495. A federal habeas court

may issue the writ under the 'contrary to' clause if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts. *Id.,* at 405–406, 120 S.Ct. 1495. The court may grant relief under the 'unreasonable application' clause if the state court correctly identifies the governing legal principle from our decisions but unreasonably applies it to the facts of the particular case. *Id.,* at 407–408, 120 S.Ct. 1495. The focus of the latter inquiry is on whether the state court's application of clearly established federal law is objectively unreasonable, and we stressed in *Williams* that an unreasonable application is different from an incorrect one. *Id.,* at 409–410, 120 S.Ct. 1495. See also *id.,* at 411, 120 S.Ct. 1495 (a federal habeas court may not issue a writ under the unreasonable application clause 'simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly')." *Bell v. Cone*, 535 U.S. 685, 694 (2002); *Windom v. Secretary, Dept. of Corrections*, 578 F.3d 1227 (11th Cir. 2009) ("A state court decision is contrary to clearly established federal law if it applies a rule that contradicts the governing law set forth in Supreme Court cases or confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to the Court's.") (quotation and other marks omitted); *Williams*, 529 U.S. at 411, 120 S.Ct. at 1522 ("Under § 2254(d)(1)'s 'unreasonable application' clause, ... a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant

state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable."); *Putman*, 268 F.3d at 1241 ("A state court conducts an 'unreasonable application' of clearly established federal law if it identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of the petitioner's case.").

Federal district courts are likewise directed to determine whether the state court based its findings on "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). A state court's determinations of fact shall be "presumed to be correct," and the habeas petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). However, even when the state court addresses a question of law, this court is not authorized "to evaluate [a petitioner's] claim *de novo* rather than through the lens of § 2254(d)." *Price*, 538 U.S. at 639, 123 S.Ct. at 1852. The Supreme Court admonishes that such *de novo* evaluation "exceeds the limits imposed on federal habeas review by 28 U.S.C. § 2254(d)...." 538 U.S. at 636, 123 S.Ct. at 1851.

As is clear from the foregoing, a federal "district court's review ... [of claims decided by the state courts] is greatly circumscribed and highly deferential to the state courts." *Crawford v. Head*, 311 F.3d 1288, 1295 (11th Cir. 2007). The AEDPA "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the

extent possible under law." *Bell*, 535 U.S. at 694.  Additionally, "[t]he usual 'presumption that state courts know and follow the law' is even stronger in the AEDPA context because § 2254(d)'s 'highly deferential standard for evaluating state-court rulings ... demands that state-court decisions be given the benefit of the doubt.'  *Woodford v. Visciotti*, 537 U.S. 19, 24, 123 S.Ct. 357, 360, 154 L.Ed.2d 279 (2002) (internal citation omitted)."  *Allen v. Secretary, Florida Dept. of Corrections*, 611 F.3d 740, 748 (11th Cir. 2010).  "In order to merit AEDPA deference the state court need not expressly identify Supreme Court precedent, nor make a perfect statement of the applicable rule of law, nor provide a detailed opinion covering each aspect of the petitioner's argument."  *Smith v. Secretary, Dept. of Corrections*, 572 f.3d 1327, 1333 (11th Cir. 2009).  "All that is required under § 2254(d)(1) [for deference to the decision of the state court] is an adjudication on the merits, not a full state court opinion."  *Parker v. Secretary, Dept. of Corrections*, 331 F.3d 764, 776 (11th Cir. 2003).

1.  **Challenge to Voluntariness of the Guilty Plea - Promised Sentence**.  Santana maintains that his guilty plea was unlawfully induced and involuntary because, he alleges, he relied on trial counsel's representation that if he pled guilty the court would impose a two-year sentence.  *Petition for Writ of Habeas Corpus - Doc. No. 1* at 10.  According to Santana, he would not have pled guilty if counsel had not "promised [him] a (2) year sentence..." *Id*.  The trial court held a hearing on Santana's Rule 32 petition at which time Santana presented evidence in support of this claim for relief.  After hearing testimony

regarding the proceedings relevant to Santana's decision to enter a guilty plea and conducting a review of the guilty plea transcript, the trial court found that during the plea colloquy Santana acknowledged: (1) He had been indicted for four separate sexual offenses; (2) He understood the agreement required only that the three other charges of first degree rape, first degree sodomy and incest would be nol prossed upon his entry of a guilty plea to first degree sexual abuse; (3) He understood that first degree sexual abuse is a Class C felony a conviction with an applicable sentencing range of one  year and one day to ten years; and (4) He acknowledged executing the explanation of rights and guilty plea form. *Respondents' Exhibit 6 - Doc. No. 6* at 12-13.   The trial court further determined that during the plea colloquy Santana "was fully informed of the right[s] he was waiving by entering his plea of guilty" and acknowledged that "we were resolving the issue of his guilt [on the sexual abuse charge] by the entry of the plea of guilty."  *Id*. at 13.  The court also determined that Santana "understood that the court had the final say of how he would be sentenced" and no agreement or recommendation existed regarding the sentence to be imposed.  *Id.*   Based on these findings, the trial court found that Santana "knowingly, voluntarily and intelligently entered his plea of guilty and the plea was not the result of force, threat, coercion or promises.   The Petitioner was made aware of the Sentencing Range.   The Petitioner admitted to touching his little girl in the vaginal area. The parties stipulated there was a factual basis for the Petitioner's plea of guilty.   The Petitioner stated he was pleading guilty because he was guilty of the offense of Sexual Abuse in the 1st

Degree....  During the colloquy the Petitioner stated that he understood the court had the final say as to sentencing.... The only agreement was that the Rape in the 1st Degree, Sodomy in the 1st Degree and Incest cases would be Nolle Prosequi if [Santana] entered a guilty plea to Sexual Abuse in the 1st Degree [as defined in] § 13A-6-66.  [The State advised and trial counsel] testified ... that no promises had been made as to what any sentence would be." *Id*. at 14.  Consequently, the trial court denied Santana relief on his Rule 32 petition. *Id*. at 15.

On appeal from the denial of the Rule 32 petition, Santana argued that the trial court erred in failing to credit the testimony provided by his witnesses during the Rule 32 hearing.  The Alabama Court of Criminal Appeals reviewed the record below, including transcripts of the plea colloquy, sentencing hearing and Rule 32 hearing, and held that "[t]he circuit court did not abuse its discretion by choosing to believe trial counsel's [testimony at the Rule 32 hearing] and certain other witnesses's testimony [at the sentencing hearing with respect to Santana's admissions of guilt to them], rather than the testimony of other witnesses presented by Santana." *Respondents' Exhibit 5 - Doc. No. 10-5* at 3.

To satisfy the requirements of due process, a guilty plea must be voluntary, intelligent and uncoerced.  *Boykin v. Alabama*, 395 U .S. 238 (1969); *United States v. Moriarity*, 429 F.3d 1012, 1019 (11th Cir. 2005).  "The longstanding test for determining the validity of a guilty plea is 'whether the plea represents a voluntary and intelligent

choice among the alternative courses of action open to the defendant.'" *Hill v. Lockhart*, 474 U.S. 52, 56 (1985) (citations omitted).  Thus, there is no violation of the Constitution when a guilty plea results from an intelligent act done with sufficient awareness of the relevant circumstances and likely consequences.  *McMann v. Richardson*, 397 U.S. 759, 766 (1970).

The record establishes that the state courts did not act contrary to Supreme Court law in determining that Santana's guilty plea was knowing and voluntary.  The trial court noted that during the guilty plea hearing it fully and correctly explained the possible range of punishment to Santana, and Santana indicated that he understood the range of punishment as explained to him.  Furthermore, when questioned by the court, Santana acknowledged that he had executed the explanation of rights form.  In addition, when the court specifically explained each of the rights Santana would waive by entering a guilty plea, Santana stated that he understood the waiver of these rights. Santana also acknowledged that he understood the entry of his plea would result in the dismissal of the three other pending charges, that there was no agreement or recommendation with respect to the sentence which would be imposed upon his entry of the guilty plea and that the trial court alone would decide the sentence for his offense. The court likewise noted that Santana stated during his guilty plea hearing that he was not promised anything, coerced or threatened in exchange for his guilty plea.  Moreover, during the plea colloquy, Santana admitted to touching his 5 year old stepdaughter on her panties in the area of her vagina

and, through counsel, stipulated to all elements of the offense.  At the Rule 32 hearing, counsel testified that he entered the stipulation based on the evidence known to him, including allegations of the young victim contained in a DVD describing "the terrible things" Santana had done to her, *Respondents' Exhibit 6 - Doc. No. 10-6* at 135, and Santana's admission to counsel that "he felt of his stepdaughter's private parts ... [until] she got moist." *Id*. at 122.  The state court further made findings regarding trial counsel's alleged promise to Santana that he would receive a sentence requiring that he serve only two years in prison, referring to, among other things, counsel's testimony during the Rule 32 hearing.  Based on the foregoing, the trial court determined that counsel did not promise Santana that a certain sentence would be imposed or affirmatively misrepresent to Santana that a particular sentence would, in fact, be imposed.  In affirming the trial court's finding that Santana's guilty plea was knowing and voluntary, the Alabama Court of Criminal Appeals referenced both the Rule 32 hearing testimony of Santana's trial counsel that he never promised Santana a specific sentence and Santana's statements, made during the guilty plea hearing, denying the existence of other representations or promises.

"There is a strong presumption that the statements made [by the defendant] during the [guilty plea] colloquy are true." *United States v. Medlock*, 12 F.3d 185, 187 (11th Cir. 1994).  "The representations of the defendant [during a guilty plea colloquy] as well as any findings made by the judge accepting the plea [including, but not limited to, the guilt of the defendant and the knowing and voluntary nature of the plea] constitute a formidable barrier

31

in any subsequent collateral proceedings." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977).

Further, the mere hope, subjective belief, or expectation of a defendant regarding his

sentence that is not based upon a promise by counsel is insufficient to render a guilty plea

involuntary. *See Norman v. McCotter*, 765 F.2d 504 (5th Cir. 1985); *Johnson v. Lockhart*,

746 F.2d 1367 (8th Cir.1984). Habeas relief should not be granted by crediting a petitioner's

subjective version of his understanding of the terms of his guilty plea. *See Nichols v.

Perini*, 818 F.2d 554, 558-559 (6th Cir. 1987).  Reasonable jurists could therefore agree

with the state courts' decision that the record does not support Santana's claim that counsel

promised imposition of a specific sentence.

Santana fails to establish that the decisions of the state courts finding his guilty plea

knowing and voluntary were "contrary to" or "an unreasonable application of" clearly

established federal law.  28 U.S.C. § 2254(d)(1).  Similarly, Santana does not establish that

the state courts' decisions were "based on an unreasonable determination of the facts in

light of the evidence presented" at the state proceeding.[8]  28 U.S.C. § 2254(d)(2).  Santana

also fails to offer "clear and convincing evidence" to contradict any of the state court's

factual determinations.  28 U.S.C. § 2254(e) (1).  After careful review of the record, there

is no basis for this court to conclude that the decisions of the state courts ran afoul of either

---

[8] "[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance."  *Holsey v. Warden, Georgia Diagnostic Prison*, 694 F.3d 1230, 1260 (11th Cir. 2012).  "Instead, if some fairminded jurists could agree with the state court's decision, although others might disagree, the state court's decision is not unreasonable.  To be unreasonable, the error in the state court's finding must be so clear that there is no possibility for fairminded disagreement." *Id*.

28 U.S.C. § 2254(d)(1) or 28 U.S.C. § 2254(d)(2).  Accordingly, Santana is not entitled to relief on this ground.

**2.  Ineffective Assistance of Counsel - Promise of Specific Sentence**.  Santana argues that counsel provided ineffective assistance by advising Santana he would receive a two-year sentence upon entry of a guilty plea to first degree sexual abuse.  Santana further asserts that his reliance on counsel's promise of a specific sentence deprived him of the ability to understand the consequences of his plea.  In addressing Santana's Rule 32 petition, the trial court determined that counsel made no such promise to Santana, that Santana understood the range of punishment which could be imposed by the trial court and that the trial court was the final arbiter of the sentence to be imposed.  *Respondents' Exhibit 6 - Doc. No. 10-6* at 12-14.  This determination was affirmed on appeal by both the Alabama Court of Criminal Appeals and the Alabama Supreme Court. Thus, this court will determine whether rejection of Santana' claims of ineffective assistance of counsel by the state courts "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.").  28 U.S.C. § 2254(d)(1).

The Sixth Amendment right to counsel exists to protect the fundamental right to a fair trial.  The clearly established federal law addressing issues of ineffective assistance of counsel is set forth in *Strickland v. Washington*, 466 U.S. 668 (1984).  Under *Strickland*, a petitioner must satisfy the requirements of a two-pronged test to prevail on his claims of

ineffective assistance of counsel.  First, the petitioner must establish that the performances of his attorneys "fell below an objective standard of reasonableness." *Strickland* 466 U.S. at 688.  "The proper measure of attorney performance remains simply reasonableness under prevailing professional norms." *Id.*; *Hinton v. Alabama*, --- U.S. ---, ---, 134 S.Ct. 1081, 1088 (2014) (same).  Once this threshold test is met, the petitioner must then show that the deficient performance of his counsel prejudiced his defense. *Id.* at 687.  To establish prejudice, the petitioner is required to show that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. Unreliability or unfairness does not result if counsel's ineffectiveness does not deprive the defendant of any substantive or procedural right to which the law entitles him. *Williams v. Taylor*, 529 U.S. at 393 n. 17 (2000). There is a strong presumption that counsel's performance was reasonable and adequate and great deference is shown to choices dictated by reasonable trial strategy. *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994).  Any review of an ineffective assistance of counsel claim is conducted from the perspective of defense counsel based on facts "as they were known to counsel at the time of the representation." *United States v. Teague*, 953 F.2d 1525, 1535 (11th Cir. 1992).

The claim presented to this court by Santana alleging counsel's promise of a specific sentence was decided adversely to him by the state courts.  This court has undertaken a thorough review of the relevant transcripts, the opinions issued by state courts and

controlling federal law.  After such review, it is clear that the state courts did not decide Santana's claim "differently than [the Supreme] Court has [in a case based] on a set a of materially indistinguishable facts" nor did the state court apply a rule that contradicts governing federal law. *Williams*, 362 U.S. at 412.  Consequently, rejection of these claims by the state courts was not contrary to actual Supreme Court decisions or in violation of clearly established federal law.  Moreover, under the circumstances of this case, it is clear that the decision of the state courts was objectively reasonable and likewise constituted a reasonable determination of the facts in light of the evidence presented by the parties.  Thus, Santana is not entitled to relief from this court on this claim of ineffective assistance of counsel.

## B.  Procedurally Defaulted Claims

The remaining claims for federal habeas relief are procedurally defaulted as Santana failed to present these claims to the state courts in accordance with the State's applicable procedural rules.  *O'Sullivan v. Boerckel*, 526 U.S. at 845; *Henderson*, 353 F.3d 880, 891 (11th Cir. 2003); *Pruitt v. Jones*, 348 F.3d at 1358-1359.  The respondents argue, and counsel for Santana appears to concede, that Santana, while represented by such counsel, did not present in the Rule 32 petition or on appeal from the trial court's denial of this petition his substantive challenge to the constitutionality of the guilty plea based on his purported lack of knowledge of the elements of the offense, nor counsel's alleged (i) failure to object to the trial court's omission of the elements of the offense during the plea

colloquy, (ii) failure to consult with the petitioner regarding entry of a stipulation to the factual basis regarding the elements of the offense and (iii) failure to ensure that the petitioner understood the material elements of the offense. Thus, the respondents argue that those claims presented by Santana in the instant section 2254 petition which Santana failed to raise in the Rule 32 proceedings are procedurally barred from review by this court, as Santana did not properly present and completely exhaust these claims in the state courts.

As a prerequisite to filing a federal habeas action, the petitioner must have properly exhausted state court remedies, either on direct appeal or in a state post-conviction petition, 28 U.S.C. § 2254(b), thereby giving the State the "'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." *Duncan v. Henry,* 513 U.S. 364, 365 (1995) (quoting *Picard v. Connor,* 404 U.S. 270, 275 (1971) (citation omitted)); *Kelley,* 377 F.3d at 1342-1344 (11th Cir. 2004) (a petitioner cannot raise claims in federal court if those claims, including the factual basis for the claims, were not first properly exhausted in state court.). To exhaust state remedies in accordance with the exhaustion requirement, the petitioner must fairly present every issue raised in his federal petition to each appropriate state court, including the state's highest court, alerting that court to the federal nature of the claim and a statement of the facts which entitle him to relief. *Duncan,* 513 U.S. at 365-366; *O'Sullivan,* 526 U.S. at 845; *Picard,* 404 U.S. at 277-278. "[F]or purposes of exhausting state remedies, a claim for relief in a habeas corpus must include reference to a specific federal constitutional guarantee, as well as a statement of the facts

36

that entitle the petitioner to relief." *Gray v. Netherland*, 518 U.S. 152, 162-163, 116 S.Ct. 2074, 2081, 135 L.Ed.2d 457 (1996); *McNair v. Campbell*, 416 F.3d 1291, 1302 (11th Cir. 2005) ("In order to be exhausted, a federal claim must be fairly presented to the state courts."); *Edwards v. Carpenter*, 529 U.S. 446, 452, 120 S.Ct. 1587, 1591-1592 (2000) (the exhaustion requirement is not satisfied when "the ineffective-assistance claim was 'presented' to the state courts [but] not presented in the manner that state law requires.").

It is not sufficient merely that the federal habeas petitioner has been through the state courts, *Picard v. Connor,* 404 U.S. 270, 275-76, 92 S.Ct. 509, 512, 30 L.Ed.2d 438 (1971), nor is it sufficient that all the facts necessary to support the claim were before the state courts or that a somewhat similar state-law claim was made, *Anderson v. Harless,* 459 U.S. 4, 6, 103 S.Ct. 276, 277, 74 L.Ed.2d 3 (1982) (citations omitted). The petitioner must present his claims to the state courts such that they are permitted the "opportunity to apply controlling legal principles to the facts bearing upon (his) constitutional claim." *Picard,* 404 U.S. at 277, 92 S.Ct. at 513 (alteration in original).

***Thus, the prohibition against raising nonexhausted claims in federal court extends not only to broad legal theories of relief, but also to the specific assertions of fact that might support relief. For example, habeas petitioners may not present particular factual instances of ineffective assistance of counsel in their federal petitions that were not first presented to the state courts.*** *Footman v. Singletary*, 978 F.2d 1207, 1211 (11th Cir. 1992). *As we explained,*

> *allowing a habeas petitioner to allege a single instance of ineffective assistance in his state post-conviction proceedings and then proceed to federal court to allege additional instances would be contrary to the state's "full and fair opportunity to address the claim on the merits." The state would never have the benefit of evaluating the claim using a fully developed set of facts. This would not be the "serious and meaningful" exhaustion of claims that Congress intended.*

*Id.*; *see also Carriger v. Lewis,* 971 F.2d 329, 333 (9th Cir. 1992) (en banc) (holding that, where the habeas petitioner properly raised only one

> ineffective assistance claim on collateral attack in state court, he could seek federal relief based on that specific claim, but not based on other alleged attorney defects that were not presented to the state courts); *Maynard v. Lockhart,* 981 F.2d 981, 984-85 & n. 1 (8th Cir. 1992) ("To preserve an allegation of ineffective assistance for federal habeas review, a petitioner must present that specific allegation to a state court."). Furthermore, habeas petitioners cannot preserve otherwise unexhausted, specific claims of ineffective assistance merely by arguing that their lawyers were ineffective in a general and unspecified way. *See Weeks [v. Jones],* 26 F.3d [1030] at 1044-46 [(11th Cir. 1994)] (rejecting petitioner's argument that "the general claim of ineffective assistance in state court preserves for federal review all alleged instances of ineffectiveness, regardless of whether evidence of a particular act was presented to the state court"). In sum, to preserve a claim of ineffective assistance of counsel for federal review, the habeas petitioner must assert this theory of relief and transparently present the state courts with the specific acts or omissions of his lawyers that resulted in prejudice. In sum, to preserve a claim of ineffective assistance of counsel for federal review, the habeas petitioner must assert this theory of relief and transparently present the state courts with the specific acts or omissions of his lawyers that resulted in prejudice.

*Kelley*, 377 F.3d at 1343-1344 (emphasis added). The court further advised that "[t]o ensure exhaustion, petitioners must present their claims in this manner of clarity throughout 'one complete round of the State's established appellate review process.' *O'Sullivan v. Boerckel*, 526 U.S. 838, 845, 119 S.Ct. 1728, 1732, 144 L.Ed.2d 1 (1999). As long as state supreme court review of a prisoner's claims is part of a state's ordinary appellate review procedure, prisoners of that state must present their claims to the state supreme court to preserve those claims for federal review, even if review by that court is discretionary. *See id*. at 848-49, 119 S.Ct. at 1734." *Kelley*, 377 F.3d at 1345.

The pleadings filed by Santana during the Rule 32 proceedings establish that

Santana failed to exhaust his claim regarding alleged lack of knowledge of the elements of first degree sexual abuse and his claims of ineffective assistance of counsel arising from counsel's purported failure to explain these elements adequately.   This court may therefore reach the merits of Santana's procedurally defaulted claims "only in two narrow circumstances.   First, a petitioner may obtain federal review of a procedurally defaulted claim if he can show both 'cause' for the default and actual 'prejudice' resulting from the default. *See Murray v. Carrier,* 477 U.S. 478, 485, 106 S.Ct. 2639, 2644, 91 L.Ed.2d 397 (1986); *[Wainwright v.] Sykes*, 433 U.S. [72,] 87 [(1977)]....   Second, a federal court may also grant a habeas petition on a procedurally defaulted claim, without a showing of cause or prejudice, to correct a fundamental miscarriage of justice. *Murray*, 477 U.S. at 495-96, 106 S.Ct. at 2678.   A 'fundamental miscarriage of justice' occurs in an extraordinary case, where a constitutional violation has resulted in the conviction of someone who is actually innocent. *Id*."   *Henderson*, 353 F.3d at 892.

## 1. Cause and Prejudice.

"To establish 'cause' for procedural default, a petitioner must demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in the state court." *Wright v. Hopper,* 169 F.3d 695, 703 (11th Cir.1999).   To establish "prejudice," a petitioner must show that there is at least a reasonable probability that the result of the proceeding would have been different. *Id.*; *Crawford v. Head,* 311 F.3d 1288, 1327-28 (11th Cir.2002).

*Henderson*, 353 F.3d at 892.

The United States Supreme Court has recognized that counsel's ineffectiveness in

39

properly preserving a claim in state court may constitute sufficient cause to overcome procedural default of another claim. *Murray v. Carrier*, 477 U.S. 478, 488-89 (1986); *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000) ("in certain circumstances counsel's ineffectiveness in failing properly to preserve the claim for review in state court will suffice") (citing *Carrier*, 477 U.S. at 488-89). Generally, "a petitioner cannot rely on the ineffective assistance of post-conviction counsel to establish cause to excuse a procedural default because there is no constitutional right to an attorney in state post-conviction proceedings." *Gore v. Crews*, 720 F.3d 811, 816 (11th Cir. 2013) (citing *Coleman*, 501 U.S. at 752).[9]  Likewise, "an ineffective-assistance-of-counsel claim asserted as cause for the procedural default of another claim can itself be procedurally defaulted." *Edwards*, 529 U.S. at 453 (2000).[10]

In *Martinez v. Ryan*, 566 U.S. ---, 132 S. Ct. 1309 (2012), however, the Supreme

_____

[9]Ineffective assistance of postconviction counsel is not an independent ground for federal habeas relief. 28 U.S.C. § 2254(i).  Instead, it is a claim which, if substantial, operates only as a gateway thorough which the court may address other independent constitutional claims where the failure to address these claims would result in prejudice to a petitioner.

[10]Before a claim of ineffective assistance of trial or direct appeal counsel may be used to establish cause for a procedural default, it, too, must be presented to the state courts as an independent Sixth Amendment claim.  *Edwards,* 529 U.S. at 451-52 (relying on principles of comity and federalism in requiring the claim to be presented to state courts as an independent claim).  In *Edwards*, the Supreme Court refused to allow a procedurally defaulted claim of ineffective assistance of original appellate counsel to serve as cause to excuse the procedural default of a substantive claim, i.e., a challenge to the sufficiency of the evidence, because to do so would render the exhaustion requirement "illusory." *Id.* at 451-452.  Moreover, "[n]ot just any deficiency in counsel's performance will do ... [as] the assistance must have been so ineffective as to violate the Federal Constitution.  In other words, ineffective assistance adequate to establish cause for the procedural default of some ***other*** constitutional claim is ***itself*** an independent constitutional claim." *Id.* at 451 (emphasis in original).

Court recognized a narrow exception to the rule in *Coleman* regarding claims of ineffective assistance of trial counsel. Specifically, the Court held "[w]here, under state law, claims of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding, a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective." *Martinez*, 132 S. Ct. at 1320;[11] *see also Gallow v. Cooper*, 133 S. Ct. 2730 (2013) (Breyer, J., on denial of petition for certiorari) ("The ineffective assistance of state habeas counsel might provide cause to excuse the default of the [ineffective assistance of trial counsel] claim, thereby allowing the federal habeas court to consider the full contours of [the petitioner's] ineffective-assistance claim.").

An "initial-review collateral proceeding" is a "collateral proceeding[] which provide[s] the first occasion to raise a claim of ineffective assistance [of trial counsel]." *Martinez*, 132 S. Ct. at 1315. The Court further explained that a "substantial" claim of ineffective assistance of trial counsel is one with "some merit." *Id*. at 1318-1319. The Court also advised that a claim of ineffective assistance of trial counsel is "insubstantial

---

[11]The Court in *Martinez* was careful to limit the scope of its ruling. *Martinez*, 132 S. Ct. at 1319-1320. The ruling "does not extend to attorney errors in any proceeding beyond the first occasion the State allows a prisoner to raise a claim of ineffective assistance at trial, even though that initial-review collateral proceeding may be deficient for other reasons." *Id.* at 1320; *see Banks v. Workman*, 692 F.3d 1133, 1148 (10th Cir. 2012) ("The Court said in no uncertain terms that '[t]he rule of *Coleman* governs in all but the limited circumstances recognized here.' [*Martinez*, 132 S.Ct] at 1320. *Martinez* applies only to 'a prisoner's procedural default of a claim of ineffective assistance at **trial**,' not to claims of deficient performance by appellate counsel. *Id*. at 1315 (emphasis added).").

[when] it does not have any merit or [] is wholly without factual support, or [] the attorney in the initial-review collateral proceeding did not perform below constitutional standards." *Id.* at 1319.

In *Trevino*, the Court extended the holding of *Martinez* to cases where, as a matter of systemic operation, the first opportunity to challenge trial counsel's effectiveness is in state post-conviction proceedings. *Trevino v. Thaler*, --- U.S. ---, ---, 133 S. Ct. 1911, 1918, 1921 (2013). To demonstrate cause in circumstances where *Martinez* and *Trevino* apply, a petitioner must establish (1) a substantial claim of ineffective assistance of trial counsel; (2) the cause for failing to exhaust the claim is ineffective post-conviction counsel or no post-conviction counsel in the initial-review collateral proceeding; (3) the state collateral proceeding was the initial opportunity to review the claim regarding trial counsel's performance; and (4) applicable state law requires, either by law or as a practical matter, that ineffective assistance of trial counsel claims be raised in the initial post-conviction proceeding. *Trevino*, 133 S. Ct. at 1918; *Martinez*, 132 S. Ct. at 1318-1319, 1320-1321. If a petitioner can establish cause under *Martinez*, he still must establish prejudice as a result of the defaulted ineffective assistance of trial counsel claim, that is, but for the error, there is a reasonable probability that the result of the proceeding would have been different. *See Martinez,* 132 S. Ct. at 1321 (remanding the questions "whether [Petitioner's] attorney in his first collateral proceeding was ineffective [and] whether his claim of ineffective assistance of trial counsel is substantial. And the court [of appeals] did

not address the question of prejudice."); *see also Trevino*, 133 S. Ct. at 1921 (remanding the questions "whether Trevino's claim of ineffective assistance of trial counsel is substantial [and] whether Trevino's initial state habeas attorney was ineffective").

Santana alleges that this court should ignore the procedural default of his substantive claim alleging lack of knowledge of the elements of the offense and his attendant claims of ineffective assistance of trial counsel because post-conviction counsel– the same counsel representing Santana before this court– failed to present these claims to the trial court in the Rule 32 petition. *Petitioner's Response - Doc. No. 14* at 13 ("[Procedural default should not apply [because] Counsel failed to properly articulate these claims in presentation to State Courts in accordance with procedural rules and applicable federal laws.").  Since Santana's procedural default occurred during the initial-review collateral proceeding, this court must determine whether the assistance provided by post-conviction counsel establishes cause for the asserted procedural default.  *Martinez*, 132 S.Ct. at 1315 ("[I]nadequate assistance of counsel in an initial-review collateral proceeding on a claim of ineffective assistance at trial may provide cause for a procedural default in a federal habeas proceeding."); *see also Trevino*, 133 S.Ct. at 1921 ("Where, as here, state procedural framework, by its design and operation, makes it highly unlikely in a typical case that a defendant will have a meaningful opportunity to raise a claim of ineffective assistance of trial counsel on direct appeal, our holding in *Martinez* applies.") Accordingly, the court will address whether the claims of ineffective assistance of trial

counsel are substantial.

Santana alleges that at no time prior to his entry of a guilty plea did trial counsel explain the elements of first degree sexual abuse to him.  He argues that counsel's failure to explain the elements of the offense rendered his guilty plea unknowing as he did not have a requisite understanding of offense elements.  However, during the plea colloquy, Santana acknowledged to the court that he was "pleading guilty to sexual abuse first degree because you are, in fact, guilty of that offense."  *Respondents' Exhibit 1 - Doc. No. 10-1* at 12.  When the trial court asked Santana for the factual basis underlying his guilty plea to the charge of first degree sexual abuse, Santana responded that he "touched his little girl on the outside of her panties" and admitted that this touching occurred in "her vagina area." *Id*.  Santana likewise conceded he had knowledge of the indictment issued against him and, in contradiction to the assertions made to this court, provided testimony during his Rule 32 hearing indicating his understanding of the initial charge lodged against him in August of 2006 for his sexual contact with a child less than 12 years of age in violation of Ala. Code § 13A-6-66, and complaining that the State "kept adding on [other] charges." *Respondents' Exhibit 6 - Doc. No. 10-6* at 33.  In addition, Santana testified that within a few days of his gaining knowledge of the initial charge for first degree sexual abuse he and his parents had a meeting with Mr. Sawyer during which Santana "explained to him the situation." *Id*. at 34.  Santana also testified that he advised counsel "every time we talked" that he had admitted to several people touching his stepdaughter in the area of her vagina.

*Id*. at 55.  All of the foregoing statements mitigate against the purely self-serving allegation that Santana did not understand the elements of the offense.  Moreover, it is clear from Santana's response to the court's question regarding the basis for his plea that Santana understood the elements of the offense.

In addition, counsel testified at the Rule 32 hearing that he had extensive discussions with Santana addressing "everything in the world about his plea [and] trying [the case]."  *Respondents' Exhibit 6 - Doc. No. 10-6* at 120.  Counsel further testified that he explained the elements of the offense to Santana "during the course of my representation of him[,]" and assumed such explanation was "in depth because of the serious nature of the [charges]."  *Id*. at 123.  In explaining the time he actually spent with Santana reviewing the criminal cases, counsel testified that he discussed the elements of sexual abuse with Santana "from time to time" and reviewed all aspects of "this case on several occasions in preparation for trying the case."  *Id*. at 125.

As noted above, after conducting a hearing on the Rule 32 petition and reviewing the guilty plea transcript, the trial court determined that Santana "knowingly, voluntarily and intelligently entered his plea of guilty...."  *Respondents' Exhibit 6 - Doc. No. 10-6* at 14.  On appeal from this decision, the Alabama Court of Criminal Appeals determined that the trial court did not abuse its discretion in denying Santana relief from his guilty plea.  *Respondents' Exhibit 5 - Doc. No. 10-5* at 3-4.  The Alabama Supreme Court summarily denied Santana's petition for writ of certiorari.

This court has thoroughly reviewed the explanation of rights form executed by Santana, in which he certifies understanding the charge against him, the guilty plea transcript and the transcript of the Rule 32 hearing, and finds that the claim presented by Santana alleging he did not understand the elements of the offense is refuted by the record in this case.  Consequently, Santana's claims of ineffective assistance of trial counsel arising from counsel's alleged failure to apprise Santana of the elements of the offense lack merit.  Because the court finds that the ineffective assistance of trial counsel claims are not "substantial" claims, the claim of ineffective assistance of post-conviction counsel does not establish cause excusing the procedural default of Santana's claims for federal habeas relief.  *Trevino*, 133 S. Ct. at 1918; *Martinez*, 132 S. Ct. at 1318-1319, 1320-1321.

Based on the foregoing, the court concludes that Santana has failed to demonstrate cause for his failure to present the procedurally defaulted claims to the state courts in compliance with applicable procedural rules.  Additionally, in light of this court's determination that Santana had knowledge of the elements of the offense, he likewise cannot demonstrate the prejudice necessary to excuse the procedural default.

    **2.  Fundamental Miscarriage of Justice**.  Santana entered a plea of guilty to first degree sexual abuse. As previously determined, the state courts properly decided that Santana knowingly and voluntary entered his guilty plea.  In addition, this court found that Santana understood the elements of the offense at the time he pled guilty to first degree sexual abuse.  By pleading guilty, Santana therefore admitted all of the factual elements

46

necessary to establish the crime. "The representations of the defendant [at a plea hearing] as well as any findings made by the judge accepting the plea constitute a formidable barrier in any subsequent collateral proceedings." *Blackledge*, 431 U.S. at 74 (1977). The law is well settled that "[a] plea of guilty and the ensuing conviction comprehend all of the factual and legal elements necessary to sustain a binding, final judgment of guilt and a lawful sentence." *United States v. Broce*, 488 U.S. 563, 569 (1989).

Santana argues that this court should address the merits of his claims to prevent a fundamental miscarriage of justice. The miscarriage of justice standard is directly linked to actual innocence. *Schlup v. Delo*, 513 U.S. 298, 321 (1995). Actual innocence is not an independent claim; rather, it is the "gateway" through which a petitioner must pass before a court may consider constitutional claims which are defaulted. *Id.* at 315. This exception applies where a petitioner establishes that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray v. Carrier*, 477 U.S. 478, 496 (1986); *Schlup v. Delo*, *supra*. "To establish actual innocence, [a habeas petitioner] must demonstrate that ... 'it is more likely than not that no reasonable juror would have convicted him.' *Schlup v. Delo*, 513 U.S. 298, 327-328, 115 S.Ct. 851, 867-868, 130 L.Ed.2d 808 (1995)." *Bousley  v. United States*, 523 U.S. 614, 623 (1998). "[T]he *Schlup* standard is demanding and permits review only in the '"extraordinary"' case." *House v. Bell*, 547 U.S. 518, 538, 126 S.Ct. 2064, 2077 (2006). Thus, "[i]n the usual case the presumed guilt of a prisoner convicted in state court counsels against federal

review of defaulted claims."  547 U.S. at 537, 126 S.Ct. at 2077.  "It is important to note in this regard that 'actual innocence' means factual innocence, not mere legal insufficiency. *See Sawyer v. Whitley*, 505 U.S. 333, 339, 112 S.Ct. 2514, 2518-2519, 120 L.Ed.2d 269 (1992)." *Bousley*, 523 U.S. at 623-624; *Doe v. Menefee*, 391 F.3d 147, 162 (2nd Cir. 2004) ("As *Schlup* makes clear, the issue before [a federal district] court is not legal innocence but factual innocence."). *Schlup* observes that "a substantial claim that constitutional error has caused the conviction of an innocent person is extremely rare....  To be credible, such a claim requires petitioner to support his allegations of constitutional error with ***new reliable evidence*** -- whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence -- that was not presented at trial.  Because such evidence is obviously unavailable in the vast majority of cases, claims of actual innocence are rarely successful."  513 U.S. at 324 (emphasis added).

Throughout the pleadings before this court, Santana merely alleges that he is actually innocent of first degree sexual abuse.  The court therefore construes the petition to rely on Santana's testimony during the Rule 32 hearing that he does not believe his touching his stepdaughter between her legs and in the area of her vagina constitutes sexual abuse. *Respondents' Exhibit 6 - Doc. No. 10-6* at 72-73 ("I touched her between her legs and outside of her panties ... [b]ecause she said she was wet.").

The fundamental miscarriage of justice exception to procedural default is extremely narrow in scope and concerned with a petitioner's actual innocence as compared to his

technical or legal innocence. *Bousley*, 523 U.S. at 623-624. Santana's assertion of actual

innocence is based solely on his own self-serving declaration that he is actually innocent

of sexually abusing his stepdaughter, an assertion that is due little weight in this habeas

action. *See Menefee*, 391 F.3d at 168-169 (petitioner's admission at plea hearing may be

considered evidence of guilt which contradicts later claim of actual innocence); *United*

*States v. Leibowitz*, 919 F.2d 482, 483 (7th Cir. 1990) (recantation testimony viewed dimly);

*United States v. Nixon*, 881 F.2d 1305, 1311 (5th Cir. 1989) (recantation of testimony

"ordinarily met with extreme skepticism."); *United States v. Johnson*, 487 F.2d 1278, 1279

(4th Cir. 1973) (recantation of testimony "looked upon with the utmost suspicion."). The

court therefore concludes that Santana has failed to make the requisite showing of actual

innocence as he has presented no "new reliable evidence" of his innocence which could

satisfy the stringent standard set forth in *Schlup*.[12] Consequently, the procedurally defaulted

claims are barred from review by this court.

## IV. CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

---

[12]To the extent that the petition can be construed to assert an independent claim of actual innocence, Santana is likewise entitled to no relief. For a petitioner to prevail on a claim of actual innocence, he must link the claim to a claim of constitutional error rather than assert his innocence as a freestanding claim. In *Brownlee v. Haley*, 306 F.3d 1043, 1065 (11th Cir. 2002), the court reiterated the Supreme Court's holding in *Herrera v. Collins* that "[c]laims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceedings." 506 U.S. 390, 400, 113 S.Ct. 853, 122 L.Ed.2d 203 (1993). As the Eleventh Circuit stated, "[i]t is not our role to make an independent determination of a petitioner's guilt or innocence based on evidence that has emerged since the trial." *Brownlee*, 306 F.3d at 1065. Since Santana has not shown an independent constitutional violation, any freestanding claim of actual innocence must fail.

1.  The petition for habeas corpus relief filed by Eliezer Santana be DENIED.

2.  This case be DISMISSED with prejudice.

It is further

ORDERED that on or before March 27, 2014, the parties may file objections to the Recommendation.  Objections must specifically identify the findings in the Recommendation to which the party is objecting. Frivolous, conclusive or general objections will not be considered by the District Court.  The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings in this Recommendation shall bar the party from a de novo determination by the District Court of issues covered in the Recommendation and shall bar the party from attacking on appeal factual findings in the Recommendation accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); *see Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982); *Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, *en banc*) (adopting as binding precedent all decisions of the former Fifth Circuit handed down prior to September 30, 1981).

DONE, this 13th day of March, 2014.

/s/ Susan Russ Walker
SUSAN RUSS WALKER
CHIEF UNITED STATES MAGISTRATE JUDGE